Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>vs.<br><br>BEXHET M. BORDONICI,<br><br>                  Defendant. | Case No. 4:01-cr-0014-JWS<br><br>**MOTION TO REDUCE SENTENCE<br>AND SUPPORTING MEMORANDUM** |

       Defendant, Bexhet M. Bordonici, by and through counsel Mary C. Geddes, Assistant Federal Defender, respectfully moves this court for resentencing pursuant to 18 U.S.C. § 3582(c), in light of the retroactive 'crack' amendment to the United States Sentencing Guidelines. Mr. Bordonici is 68 years old and incarcerated.  He seeks a reduction of his sentence from 60 to 40 years under the authority of 18 U.S.C. §§ 3582(c) and 3553(a).

In 2002, Mr. Bordonici received a total sentence of 720 months, or 60 years. Of that total, 40 years are statutorily-required minimum and consecutive sentences.[1] The remainder of his sentence was imposed according to the then-mandatory Sentencing Guidelines.

## I.   THE ORIGINAL SENTENCE

In 2001, Bexhet M. Bordonici, was convicted by a jury of 105 counts. As previously stated, his offenses netted 480 months, or 40 years of minimum-mandatory and consecutive sentencing. However, Mr. Bordonici received a total sentence of 60 years based upon the then-mandatory guideline sentencing regime. Among the various crimes were conspiracy to distribute drugs and distributing drugs.

The PSR writer, Karen Brewer, determined the guidelines sentences, and concluded that Mr. Bordonici should receive a combined adjusted offense level of 40 and had a criminal history category of III. Ms. Brewer reached this conclusion having calculated the "Adjusted" Offense Level for two different "groups" of offenses. The offense level for Group 1 (debt collection by extortion count) was 20. The offense level for Group 2 was determined by calculating the offense levels of each subgroup of offenses within the group and then using the offense level for the most serious of the counts comprising the group. <u>The highest adjusted offense levels (all 40) were created by reference to Mr. Bordonici's distribution of drugs in PSR paragraph 153.</u>. *See* ¶¶ 149, 159, 189 (referencing, in turn, ¶¶ 143, 153, 183).[2] (Because the total quantity of drugs was 574 grams of

---

[1] Three hundred sixty months was imposed as mandatory consecutive sentences for violations of 18 U.S.C. § 924(c) and 120 months were imposed for minimum mandatory drug sentences which were imposed concurrently.

[2] In ¶¶ 151-153, the PSR writer concluded that the amounts and types of controlled substances were 579 grams of cocaine base and 178 grams of cocaine powder.

cocaine base and 178 grams of cocaine powder, the base offense level was 36.)  The combined offense level for Groups 1 and 2 was thereafter obtained by counting, as one unit, the group with the highest level and disregarding any group that is 9 or more levels less than the group with the highest offense level.  The combined offense level was therefore 40.

There were no objections made by the defense attorney to PSR nor were there, apparently, any departures discussed.  At a criminal history category of III, the guideline sentence was "360-life" months of imprisonment.  The court imposed the low end of the guideline, 360 months.

This guideline sentence included concurrent terms of up to 10 years for minimum mandatory drug sentences.

## II.   THE CRACK COCAINE AMENDMENT AS A BASIS FOR RESENTENCING

Mr. Bordonici is eligible for a resentencing under 18 U.S.C. § 3582(c).  As the Circuit Court has written,

> While § 3582(c)(2) proceedings do not constitute full resentencings, their purpose is to give defendants a new sentence.  This resentencing, while limited in certain respects, still results in the judge calculating a new Guideline range, considering the § 3553(a) factors, and issuing a new sentence based on the Guidelines.  The dichotomy drawn by the government, where full resentencings are performed under an advisory system while "reduction proceedings," or "modifications," rely on a mandatory Guideline system, is false.  As discussed above, *Booker* [*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)] excised the statutes that made the Guidelines mandatory and rejected the argument that the Guidelines might remain mandatory in some cases but not in others.  *Booker*, 543 U.S. at 263-66, 125 S. Ct. 738.  Mandatory Guidelines no longer exist, in this context or any other.

*United States v. Hicks*, 472 F.3d 1167, 1171-72 (9th Cir. 2007).  Each of the predicate conditions conferring jurisdiction are met in this case.  Mr. Bordonici was sentenced in 2002 based on a

guideline range that was lowered by the Sentencing Commission in November 2007. A reduction now is consistent with the policy statements recently issued by the Commission. The Sentencing Commission has determined that its action partially ameliorating the disparity between crack and powder cocaine should be made retroactive. Now, in the aftermath of the crack amendment to the Sentencing Guidelines, the base level of 36 would be corrected by two levels to level 34; with the addition of 4 levels, the result would be a total offense level of 38 and a pertinent advisory sentencing range, in Criminal History Category III, of 292 to 365 months. The low end of that range is 70 months less than his current sentence.

### III.    REQUEST FOR REDUCTION BASED ON § 3553(A) GROUNDS

Mr. Bordonici requests resentencing, as he seeks the correction/reduction of his guideline sentence and of considerations pursuant to *Booker*. *See United States v. Hicks*, 472 F.3d 1167, 1171-72 (9th Cir. 2007). In *Hicks*, the Circuit Court held that, as a matter of first impression, *United States v. Booker*, 543 U.S. 220, 245-46, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), applies to resentencing proceedings pursuant to § 3582(c)(2), and the courts are therefore not limited in its sentencing considerations to 'mandated' matters.[3]

Indeed, consideration of non-guideline or § 3553(a) factors is expressly mandated by the statute. Such a limitation would likely be unconstitutional, according to *Hicks*:

---

[3] The Supreme Court's interpretation of the Sentencing Reform Act in *United States v. Booker*, 543 U.S. 220 (2005), now applies to every component of the Act, including § 3582(c). Although *Booker* was presented as a constitutional case, the remedial portion of the opinion is one of statutory construction. As a matter of statutory construction, the Sentencing Reform Act only requires respectful consideration of the guideline ranges, but does not require adherence to the sentencing ranges or to policy statements. *Booker*, 543 U.S. at 262. *See also Kimbrough v. United States*, 128 S. Ct. 558, 570-71 (2007), and *Gall v. United States*, 128 S. Ct. 586, 594 (2007).

> *Booker* "provides a constitutional standard which courts may not ignore by treating Guidelines ranges as mandatory in any context. Thus, to the extent that the policy statements are inconsistent with Booker by requiring that the Guidelines be treated as mandatory, the policy statements must give way."

*Hicks*, 472 F.3d at 1175. The Guidelines cannot preclude Mr. Bordonici from arguing that even the amended guidelines fail to reflect § 3553(a) considerations, or reflect an unsound judgment, or do not treat offense characteristics in the proper way, or that a different sentence is appropriate regardless. *See Rita v. United States*, 127 S. Ct. 2456, 2465, 2468 (2007).

### A.   Characteristics of the Offense Operate in Favor of A Lower Sentence

In seeking a reduction of sentence, Mr. Bordonici asks the court to consider the continuing disparity in the crack/cocaine ratio. The Supreme Court has now explained that, "as a necessary corollary to the constitutional proscription on treating the Guidelines as mandatory," sentencing courts may not presume that the Guidelines range (original or amended) is reasonable. *See Gall v. United States*, 128 S. Ct. at 596-97; *see Rita v. United States*, 127 S. Ct. at 2465.

The court must make an "individualized assessment" of the sentence warranted by § 3553(a) "based on the facts presented," *Gall v. United States*, 128 S. Ct. at 597. The sentencing court has a unique ability to make such assessments, and the Supreme Court has certainly indicated that district courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence, as it did in *Kimbrough*.

In *Kimbrough*, the Supreme Court held that "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the district court [in *Kimbrough*] erred in holding the crack/powder disparity mandatory." *Id.* at 564. As a result, this court is free to

"conclude . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 563.

The Supreme Court's decision in *Kimbrough* was grounded in the research and recommendations of the United States Sentencing Commission itself, which has acknowledged that the crack/powder disparity in the Guidelines is deeply flawed. *Id.* at 568 (*citing* Commission's conclusion in its 2002 report to Congress that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 [Anti-Drug Abuse] Act").[4] Indeed, based on its research, the Commission has recommended at different times that Congress reduce the disparity to 20 to 1, 5 to 1, and as low as 1 to 1. *Id.* at 569 (*citing* Commission's 1995, 1997, and 2002 reports).

Most recently, when it submitted its proposed two-level reduction in the crack Guideline, the Commission recommended that Congress further "substantially" reduce the ratio. *Id.* at 569 (*citing* Commission's 2007 report). The Commission recommended further reductions in the ratio because even the amended crack guideline still yields grossly disproportionate sentences. In *Kimbrough*, the Supreme Court characterized the amendment as "modest," noting that it "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1" – well above the Commission's recommended ratios. *Id.* at 573. Thus, the Court found, "[t]he amended Guidelines still produce sentencing ranges keyed to the mandatory minimums in the 1986

---

[4] Among the flaws in the Guideline are: (1) "the assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution;" "the 'anomalous' result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" and "the severe sentences . . . imposed 'primarily upon black offenders.'" *Id.* at 568.

Act," which it identified as the source of the unwarranted disparity between the crack and powder cocaine Guidelines to begin with. *Id.* at 569 n.10. Indeed, even the Commission has admitted that the amendment is "'only . . . a partial remedy' for the problems generated by the crack/powder disparity." *Id.* at 569 (*citing* Commission's 2007 report).

Because the amended guideline still results in sentences that are based on an unwarranted disparity and fail to serve the purposes of sentencing, this Court should impose a lower sentence in this case. *Id.* at 576. *Kimbrough*'s rationale for varying from the crack guidelines therefore remains even after the new guideline is applied.

  **B.**  **Characteristics of the Offender Operate in Favor of a Time-Served Sentence**

In seeking a reduction of sentence, Mr. Bordonici asks the court to consider his own characteristics as relevant to a determination of a post-*Booker* sentence.

Mr. Bordonici's counsel has not yet been provided with a copy of the BOP Sentry records reflecting BOP's assessment of his post-offense institutional conduct.. He would like to reserve an opportunity to argue that his BOP history reflects his rehabilitation.

Additionally, however, he would argue that his sentence should be reduced to the statutory minimum-mandatory and consecutive sentences he received, which is 40 years or 480 months based upon his sentence, his age, and the low risk of recidivism he would present.

Mr. Bordonici went into custody on November 7, 2000. The undersigned has roughly calculated that Mr. Bordonici will be required to serve 418 months under the present good-time calculations. By that time, if he is still alive, Mr. Bordonici will be 97 years old based on the undersigned's calculations. Chances are poor for Mr. Bordonici's survival to that age. According to the Social Security Administration, a man alive at age 68 can only reasonably hope to live to 82.

Even if he does live that long, Mr. Bordonici will present no threat to the public. According to the United States Sentencing Commission Report in 2004, "Measuring Recidivism," "[r]ecidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates.. Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent."

**IV.    CONCLUSION**

The court at re-sentencing will consider the factors set forth in 18 U.S.C. § 3553(a). Mr. Bordonici urges the court to find that the public safety will be served by the statutory minimum mandatory penalties; that sentence is, under 18 U.S.C. § 3553(a), "sufficient" for the statutory objectives and "greater than necessary" for the purposes of 18 U.S.C. § 3553(a).

DATED this 1st day of August, 2008.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on August 1, 2008, a copy of the foregoing document, with attachments, was served electronically on:

Stephen Cooper, Esq.

/s/ Mary C. Geddes